UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| DONAVON G. BURDINE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-155-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Donavon Burdine has moved for judgment on the pleadings [Record No. 15] and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, has filed a motion for summary judgment [Record No. 20]. Burdine contends that the administrative law judge ("ALJ") assigned to his case erred in denying his application for benefits. He argues more specifically that the ALJ failed to afford proper weight to the opinion of his treating physician and to the disabling portions of the consultative examiner's opinion. [Record No. 15, 1] Burdine requests that the Court grant his motion for judgment on the pleadings or, alternatively, that the matter be remanded for a new administrative hearing. [*Id*. at 12.] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 20] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Burdine.

## I. PROCEDURAL HISTORY

Burdine filed an application for Title II Disability Insurance Benefits ("DIB") on October 23, 2015, and for Title XVI Supplemental Security Income ("SSI") on October 19,

2015. [Administrative Transcript, "Tr." 181-185, 194-203] He originally claimed a disability onset date of September 15, 2015. [Tr. 181] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. [Tr. 72, 73] Burdine then requested a hearing before an ALJ. [Tr. 100]

ALJ Dennis Hansen issued a written opinion following the administrative hearing, finding that Burdine was not disabled. [Tr. 12-31] The Appeals Council subsequently denied Burdine's request for review. [Tr. 1] Accordingly, Burdine has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. RELEVANT FACTS

Burdine was 45 years-old at the time of ALJ Hansen's decision. [Tr. 35] He previously worked as a tractor-trailer driver, material handler, merchandise deliverer, warehouse manager, lumber deliverer, and sales attendant. [Tr. 53] Burdine did not complete high school but later obtained a General Equivalency Diploma. [Tr. 35]

Medical records indicate that the plaintiff suffered from both physical and mental medical impairments. The physical conditions noted in Burdine's medical records include: narrowing disc spaces in the lumbar spine, tinnitus, hypertension, chest wall pain, mild heart plaque, a small partial rotator cuff tear, a small abdominal hernia, and a history of stroke. [*See, e.g.*, 383-403, 414-21, 529-33, 550-53, 571-590.] However, Burdine's motion focuses more on his mental health problems, including anxiety and depression. [Record No. 15-1]

Burdine saw Dr. Gregory Sherry on July 14, 2015. [Tr. 426-438] Burdine explained he sometimes became "nervous and tore up" about work at the lumber yard. [Tr. 426] Dr. Sherry noted that Burdine had trouble with organization. [Tr. 426] He indicated that Burdine's symptoms were likely anxiety-related and that he probably has true panic attacks. [Tr. 427]

Burdine met with consultative examiner Dr. Greg Lynch on December 17, 2015. [Tr. 408-412] Burdine explained to Dr. Lynch that he quit his job at the lumber yard because it was too stressful. [Tr. 409] However, he also stated that he never attended counseling and had not been hospitalized for psychiatric reasons. [Tr. 409] He maintained close relationships with family and friends and he went shopping once a week. [Tr. 410] Lynch stated that Burdine's "posture seemed tense and his overall motor activity seemed restless." [Tr. 410] He explained that Burdine seemed distractible and anxiety seemed to interfere with his concentration. [Tr. 410] Lynch noted inconsistencies in Burdine's insight about his psychological functioning. [Tr. 411]

Dr. Lynch concluded that Burdine suffered from major depressive disorder and moderate anxiety disorder. [Tr. 411] He found that Burdine's "capacity to understand, remember and carry out instructions towards performance of simple repetitive tasks seem affected by the impairment with slight limitations noted." [Tr. 412] Lynch further noted that Burdine had slight limitations to sustain attention and concentration towards performance of simple repetitive tasks. [Tr. 412] Lynch also found Burdine had moderate to marked limitations to tolerate stress and the pressure of day-to-day employment. [Tr. 412] Finally, Lynch concluded that Burdine had marked limitations in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. [Tr. 412]

Disability Determination Services ("DDS") psychological consultant Dr. Jermaine Robertson reviewed Burdine's medical records in January 2016. [Tr. 61-68] He concluded that, based on the totality of the evidence, Burdine's medical impairment is considered more than non-severe. [Tr. 63] He found however that Burdine's "psychological limitations appear minimal and, when present, are secondary to physical impairment and pain." [Tr. 63] Dr.

Robertson explained that he gave great weight to the slight limitations that Lynch noted in his opinion. [Tr. 63] However, Robertson gave little weight to the moderate to marked limitations imposed by Dr. Lynch because Lynch relied too heavily on Burdine's self-reports and the limitations were not consistent with the medical evidence in the file. [Tr. 63] Robertson concluded that Burdine "can understand, retain and carry out simple instructions. [Burdine] can consistently and usefully perform routine tasks on a sustained basis, with normal supervision, and can cooperate effectively with public and co-workers in completely simple tasks and transactions. [He] can adjust to the mental demands of most new tasks." [Tr. 68] Mary Thompson, Ph.D., reviewed Burdine's medical records in March 2016. [Tr. 80-88] She found that, even with the updated evidence received, the medical evidence still supports the prior decision of the Commissioner. [Tr. 82]

DDS medical consultant Dr. Diosado Irlandez reviewed the patient's file on March 30, 2016. [Tr. 86] Irlandez found that Burdine was capable of doing medium exertion level work. [Tr. 89] He concluded that Burdine could occasionally lift 50 pounds, frequently lift 25 pounds, and sit or stand for about 6 hours in an 8-hour workday. [Tr. 84] Irlandez also determined that he could frequently climb ramps, stairs, climb ladders, and bend at the waist. [Tr. 84] Additionally, he found that Burdine had no postural limitations for balancing, kneeling, crouching, or crawling. [Tr. 84-85]

Dr. Robina Bokhari, a neurologist/psychiatrist at Mountainview Behavioral and Neuroscience Center, treated Burdine from February 2016 to March 2017. [Tr. 474] Bokhari filled out a mental health source check-box form on March 6, 2017. [Tr. 625-626] She noted Burdine had marked limitations for dealing with work stress and is limited in his ability to focus, organize, and complete tasks in a timely manner. [Tr. 625-26] She also checked boxes

indicating that Burdine would likely be absent for three or more days a month, his symptoms were severe enough to constantly interfere with his ability to work cooperatively, and he had marked limitations for dealing with workplace stress. [Tr. 625-26] Burdine saw Dr. Bokhari in March 2017 and she noted that Burdine's anxiety improved since his last visit and his depression remained stable, but he continued to have anger issues. [Tr. 627]

Burdine also received services from Catalyst Behavioral Health from March 2016 through March 2017. He was originally seen by Dr. Martha Purcell. [Tr. 464] Burdine indicated steady progress throughout his time with Purcell, improving depression symptoms, decreased conflict and anger issues, and positive relationships with family members. [Tr. 604-14] Burdine and Purcell also addressed some of Burdine's grief over the loss of his father. [Tr. 608] Burdine advised Purcell during their conversations that he would still be happy driving a semi-truck and making a living for his family. [Tr. 614] Purcell explained the need to maintain compliance with his medicine and keep his follow-up appointments. [Tr. 483]

Purcell relocated and Burdine started seeing Dr. Lawrence Colyer. [Tr. 614] Colyer advised Burdine to begin using an anger log and Burdine did not report any anger issues or personal conflicts during the two months he treated with Colyer. [*See, e.g.*, Tr. 619, 646, 648, 650.] Burdine noted an improvement in his mental health when he changed prescriptions. [Tr. 619] He also reported a positive relationship with his family. [Tr. 623]

Burdine testified at the administrative hearing before the ALJ that he suffered from pain in his knees, hips, ankles, and chest. [Tr. 41] He also indicated that he suffered from tinnitus, anxiety, and depression. [Tr. 44-45] He explained that he takes medicine for his blood pressure, depression, anxiety, anger, and sleeping pills. [Tr. 45] Burdine stated that he sleeps for 15 to 18 hours each day and he cannot tolerate loud noises. [Tr. 50-51] He explained that

his wife does most of the household chores, but he mows the lawn. [Tr. 49] Additionally, he testified that he attends his son's soccer games. [Tr. 50] Following Burdine's testimony, the vocational expert Jo Ann Bullard testified that Burdine could not return to his past relevant work. [Tr. 54] Ms. Bullard also indicated that there are other jobs available in the national economy that a person with Burdine's limitations could perform. [Tr. 54]

ALJ Hansen issued a decision on August 17, 2017, concluding that Burdine was not disabled. [Tr. 26] After reviewing the record and considering the testimony presented, ALJ Hansen determined that Burdine had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, migraine, tinnitus, history of a transient ischemic attack, anxiety, and depression. [Tr. 18] However, the ALJ found that Burdine did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 18]

The ALJ explained that Burdine had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> can frequently climb ramps, & stairs; can occasionally stoop, kneel, crouch & crawl, can occasionally reach overhead; and can occasionally be exposed to loud noise and vibration. The claimant should never climb ladders, ropes, or scaffolds; and should never be exposed to unprotected heights or dangerous moving machinery. He can understand and remember simple instructions; can sustain attention and concentration to complete simple tasks with regular breaks every two hours; can interact as needed with co-workers and supervisors, and occasionally interact with the public; and can adapt to routine work conditions occasional workplace changes.

[Tr. 20] ALJ Hansen concluded that Burdine is unable to perform his past relevant work because they exceed "his current functional abilities." [Tr. 24] He further concluded that there are other jobs that exist in significant numbers in the national economy that Burdine can perform, such as a retail marker, sorter, or vending machine attendant. [Tr. 26] The ALJ held

that Burdine was not under disability from September 15, 2015, through the date of his decision. [Tr. 26]

## III. STANDARD OF REVIEW

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 416.920(b); 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether

he can perform his past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. LEGAL ANALYSIS

### A. The ALJ Did Not Err By Giving Little Weight To The Opinion Of Burdine's Treating Physician.

Burdine asserts that the ALJ failed to give adequate weight to the opinion of his treating physician. [Record No. 15-1, p. 8] The ALJ gave "little weight" to Burdine's treating physician, Dr. Bokhari, because her opinion was a check-box form that included no narrative

explanation, the limitations she assessed were not supported by the medical record, and her opinion was inconsistent with her conservative treatment plan. [Tr. 23]

Greater deference generally is given to the opinions of treating physicians than the opinions of non-treating physicians.[1] *Rogers*, 486 F.3d at 242. A treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c)(2). However, a treating physician's opinion can be discounted "if there is substantial medical evidence to the contrary or the physician provided a conclusory opinion that claimant is unable to work," or if the opinion is "inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings." *Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 426 (6th Cir. 2014) (citing *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012)); *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ . . . is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

If the ALJ does not give a treating source opinion controlling weight, then the opinion is evaluated based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Additionally, the ALJ must provide "good reasons" for discounting the weight given to a treating source's

---

[1] This rule applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 416.927.

opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).[2] These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)). This requirement allows a claimant to understand the disposition of his case and facilitates meaningful review of the ALJ's application of the treating physician rule. *Id.* at 544-45.

The "good reasons" requirement is not excused simply because an ALJ's decision is supported by substantial evidence. *Id.* at 546. However, an ALJ's failure to provide good reasons may be harmless error when the ALJ has met the goal of § 1527(c) even though he did not comply with its terms. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005). This can occur when the ALJ "indirectly attack[s] the 'supportability' of the doctor's opinion, § 404.1527(d)(3), or the 'consistency' of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, *see* § 404.1527(d)(3)."[3] *Id.*; *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).

The critical inquiry here is not whether the ALJ rejected the treating physician's opinion, but whether the ALJ implicitly provided sufficient reasons for his rejection of the opinion. *Hall*, 148 F. App'x at 456. Further, an insufficient discussion by an ALJ may be harmless error if the treating physician's opinion was so patently deficient that the ALJ could not possibly credit it. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir.

[2] This regulation is now located at 20 C.F.R. § 404.1527(c)(2).
[3] These regulations are now located at 20 C.F.R. § 404.1527(c)(3)-(4).

2016). The Sixth Circuit has explained that "the Commissioner may reject conclusory treating-physician opinions in favor of consulting-physician opinions that are supported by substantial evidence." *West v. Comm'r Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).

As noted above, the ALJ gave little weight to the opinion of Bokhari because it was a check-box form that included no narrative explanation. [Tr. 23] A check-box medical source statement by itself provides only weak evidence. *See Hernandez,* 644 F. App'x at 474 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")). Further, ALJ Hansen noted that the extreme limitations assessed by Bokhari were not supported by any citation in the treatment record and Bokhari also had a conservative treatment plan. [Tr. 23]

While, the ALJ could have been more thorough and given specific reasons for discounting the opinion of Bokhari, the check-box form did not provide any explanation for the marked boxes she selected. *See id*. (explaining that it is impossible to analyze the consistency of the treating physician's analysis with the medical record when the check-box form is not accompanied by any explanation); *see also Keeton v. Comm'r of Soc. Sec*., 583 F. App'x 515, 525 (6th Cir. 2014). Thus, it is nearly impossible to rely on the conclusory nature of the check-box medical source statement without a further explanation from Bokhari. Further, ALJ Hansen separately discussed the evidence in the medical record before discussing the weight given to the treating physician's opinion. [Tr. 21] Even if ALJ Hansen's "good reasons" for discounting Bokhari's opinion were insufficient, it is harmless error because Bokhari's opinion was conclusory and the ALJ met the goal of § 1527(c).

**B. The ALJ Did Not Err By Giving Marginal Weight To The Disabling Portions Of The Opinion Of The Consultative Examiner.**

Burdine also asserts that the ALJ failed to give adequate weight to the disabling portions of Lynch's consultative opinion. [Tr. 22] While "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination," ALJs have more discretion in considering non-treating source opinions. *Gayheart,* 710 F.3d at 375. Notably, they need not give reasons for discounting non-treating source opinions. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions."); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only treating sources."); *Reeves,* 618 F. App'x at 273 (same).

ALJs are not required to defer to such opinions of non-treating sources and must only provide a meaningful explanation regarding the weight given to particular medical source opinions. 20 C.F.R. § 404.1527(f)(2)(ii); *see Ott v. Comm'r of Soc. Sec.*, No. 1:08-cv-399, 2009 WL 3199064, at *7 (S.D. Ohio Sept. 29. 2009). Such opinions can be given weight only insofar as they are supported by the record. SSR 96-6, 1996 WL 374180, at *2.

ALJ Hansen gave marginal weight to the marked limitations in Lynch's report because he found that Lynch's conclusions were based on Burdine's self-reports. [Tr. 22-23] The ALJ explained that "Dr. Lynch noted in his examination report that the claimant was cooperative, maintained normal eye contact, exhibited appropriate affect, normal speech flow, appropriate thought content, and normal decision-making ability." [Tr. 22] Further, ALJ Hansen concluded that the medical records and Burdine's testimony revealed numerous activities of

daily living and attendance at public events. [Tr. 22-23] The ALJ also explained that medical records indicated that Burdine had only modest symptoms when he was compliant with his medicine. [Tr. 23] ALJ Hansen specifically mentioned and explained his reasons for discounting portions of the opinion of Dr. Lynch.

### C. The ALJ's Decision That Burdine Was Not Disabled Is Supported By Substantial Evidence.

If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently, *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), and even if the claimant's position is also supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The decision in this case is supported by the documentary record, the findings of the state agency consultants (Robertson and Thompson) and portions of the consultative examiner's opinion. The state agency consultants' opinions were consistent with the record evidence and with the conservative treatment plan that Burdine followed. [Tr. 61-82] Further, Burdine's symptoms were well-controlled when he was compliant with his treatment. [Tr. 483, 604-14] Burdine's mental conditions also improved during his time with Purcell and Colyer. [Tr. 604-14] Additionally, Burdine's testimony at the hearing revealed his attendance at public events. [Tr. 22-23] In summary, the ALJ's finding that Burdine is not disabled is supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendant's motion for summary judgment [Record No. 20] is **GRANTED.**

2. The plaintiff's motion for judgment on the pleadings [Record No. 15] is **DENIED.**

3. The Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment entered this date.

Dated: November 2, 2018.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***Danny C. Reeves***

**United States District Judge**